

UNITED STATES DISTERICT COURT
FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

F I L E D

SEP 0 8 2008 YM
Sep 8. 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TERRY YOUNG,
    PETITIONER,

VS.

UNITED STATES OF AMERICA,
    RESPONDENT

CASE NO. 08 CV 1999

Judge Lindberg

REPLY IN SUPPORT OF HABEAS CORPUS PETITION

TERRY YOUNG, *PRO SE* PETITIONER replies to the response of AUSA Podliska.

1. Although the response is so legally and factually weak as not to deserve any reply, in keeping with the recent remarks of one of the 7th Circuit judges (Posner) reply is made so that the Courts will not be able to harbor any pretense that Petitioner concedes his issues or that AUSA Podliska's response has any merit.

2. AUSA Podliska primarily rehashes old rulings and old arguments instead of addressing the current issues that Petitioner has raised, dismissing them impertinently as well as disrespectfully as ramblings punctuated with personal rants and insolent rhetoric.

3. The factual issues that Petitioner now raises were not decided on appeal. Let one example serve to illustrate how

obvious is this point. Truly, even the most casual lay observer would perceive that the "reasoning" of the *Mansoori* appellate opinions (which include Young) were fatally flawed. Even the least curious examiner would be driven to wonder why the latter decision against Young was directly contrary to the many exonerating opinions given others which Young cites in his Petition. They would not be able to discern the racial bias, however, because that becomes obvious only when one knows, as Young does, because he has spent time with them in prison, that none of the others are African-American! This fact was not raised at trial or on appeal, nor, indeed, would it have been possible to raise it then. Racial bias did not raise its ugly head until after these other appeals; nor could the pattern of prejudice be discerned until thereafter!

    4. As for new law, Young has cited a number of post-appeal cases which qualify as expressions of "change" in the law sufficient for habeas relief. Rather than reiterate the argument, Young will merely recite some of them here again: *US v. Mietus, US v. Brough, US v. Westmoreland, US v. Nance, US v. Bjorkman, US v. Messino, US v. Humphrey.*

    5. There are also legal issues that Young raised previously but were not decided heretofore. For the issues that were raised but not addressed, see Young's 7th Circuit Initial

Brief and Reply Brief, which he incorporates herein by reference, and Young's Petition for Writ of Certiorari and other filings with the United States Supreme Court, which he also incorporates herein by reference. (These should be readily accessible to the Court. If they are not, Young will endeavor to provide them upon request.) Since the 7th Circuit did not address these issues and since the Supreme Court did not accept certiorari, these issues remain appropriate as unresolved issues for inclusion in this habeas corpus proceeding. Accordingly, insofar as they may be deemed not to have been included in his original petition, Young hereby amends his original petition to include them as issues in this proceeding.

6. Young hereby also amends his petition to include those new issues which he raised before the Supreme Court in his Petition to the Supreme Court for Rehearing as follows:

"Since the filing of Terry Young's Petition for Writ of Certiorari on 6/9/07, the Supreme Court has decided *Rita v. U.S.*, 127 S.Ct. 2456 (6/21/07) which mandated an appellate standard of "reasonableness" to the determinations of the sentencing judge, irrespective of the factual source of the "sentencing factors" as long as the sentencing result is within the Federal Sentencing Guidelines. Many hundreds of inferior court cases have applied this standard through last week with the result, predicted by Justice Souter in his *Rita* dissent,

3

that sentencing has retrogressed to *McMillan v. Pennsylvania*, 477 US 79 (1986) and the 5th and 6th Amendments to the United States Constitution are being ignored again, despite *Jones v. U.S.*, 526 US 227 (1999), *Apprendi v. US*, 530 US 466 (2000), *Blakely v. Washington*, 542 US 296 (2004), and *Booker v. U.S.*, 535 US 220 (2006), all because *Booker* declared the Federal Sentencing Guidelines, which Congress intended to be mandatory, merely advisory, so to avoid their being declared unconstitutional as were the Washington State Guidelines in *Blakely*.

"Young now makes argument that the 7th Circuit's opinion in *Young II* did not meet the criteria for it being upheld because it does not comport with the requirement of reasonableness established for appellate review in *Rita*, which required as the first step that the guideline range be calculated properly, and, as the next step, that the sentencing judge state the reasons for the sentence imposed within that guideline range so that appellate review as to the reasonableness of the sentence within the guideline range may be ascertained by the appellate court. The sentencing judge did not do this in sentencing Young. [See Young's Petition for Writ, pp. 6-7.] As a result, the 7th Circuit Court of Appeals had no basis for determining that the sentence complied with the mandate of the majority in *Rita* that sentence within the guidelines be reasonable. Totally absent

4

from *Young II* was any consideration that Young's sentence was within the guideline range in the first place, according to Young a maximum of 51 months based on the grouping of drug possession, drug conspiracy and related money laundering mandated by USSG 3D. What should have been obvious to the 7th Circuit Court of Appeals was that Young's sentence was grotesquely beyond the guideline range. [See Young's Petition for Writ of Certiorari, pp. 14-16.]

### "Consequent Structural/Cataclysmic Errors

"Nor did the 7th Circuit opinion address the requirement to apply the guidelines as mandatory to avoid violation of the *ex post facto* clause of the Constitution. Instead, the 7th Circuit Panel blithely assumed that Young's sentencing was subject to post-*Booker* advisory analysis without giving it a thought, despite dispositive analysis to the contrary provided them. [Young's Petition for Writ of Certiorari, pp. 10-14.] Instead, the 7th Circuit equated "plain" error, which applied to Young's other defendants who had not raised the *Apprendi* issue upon initial sentencing and "harmless" error, which Young had raised pre-*Apprendi* via *Jones*, except that the burden of proof shifted—this at the appellate level—and derived their *faux virtual indictment* and *faux virtual jury* standards. [See Appendix to Young's Petition for Writ, pp. 107-111.] ("...In other words, the lack of a jury finding as to drug quantity [the same absence

as to money laundering was totally ignored in *Young II*] does not preclude a reviewing court from concluding that the evidence of the requisite quantity was so strong as to leave no doubt as to what the jury's finding on that subject would have been. If the court is persuaded beyond a reasonable doubt that a properly instructed jury would have found the necessary drug quantity, then the error is harmless.") Thus, the 7th Circuit substituted its own finding for the jury's which found nothing as to drug quantity [or the elements of money laundering, for that matter] because the prosecution had not wanted them to deal with that and for that reason had not included it in the indictment, thus purposely avoiding a grand jury determination as well. Instead, the prosecution wanted Judge Lindberg to find drug quantity [and the money laundering elements] by a preponderance of the evidence, whether introduced during the jury trial or during sentencing by whatever means, whether available in a jury trial or not. This is a clear violation of the right to grand jury and petit jury guaranteed by the Constitution. But the 7th Circuit said that anything was okay, even egregious denial of the most basic constitutional rights, as long as they decided the error was harmless. This is very circular reasoning, if it can be called reasoning at all. Young called it CATACLYSMIC error, citing numerous cases, including *U.S. v. Gonzalez-Lopez*, 126 S.Ct. 2557 (6/26/2006) . [See Petition for Writ of

Certiorari, pp. 8-10.] That case held that violation of the 6th Amendment was not subject to "harmless" error review. That the error in Young's case requires automatic reversal is premised on the prosecutor eliminating from jury determination every element which was once characterized between *McMillan* and *Apprendi* as a "sentencing factor" to obtain a jury verdict without the jury's deliberation on those issues and without the jury's determination of those issues, then presenting that bare verdict to the sentencing judge for his determination pursuant to a different standard of proof and thereby obtaining an embellished verdict which violated *Apprendi* because it was based on the judge's rather than the jury's determination; premised on the appellate court then substituting its own determination, putatively by applying the jury standard of "beyond a reasonable doubt" and affirming the district court's determination by a preponderance of the evidence, which violated Young's right to trial by indictment and jury, based on the appellate judges' determination of what a *virtual indictment* should have included and what a *virtual jury verdict* should have been had the prosecutor not been operating the old *McMillan* way of prosecuting instead of the new *Apprendi/Blakely* way, which, of course, is the way the 5th and 6th Amendments to the Constitution command.

"The 5th Amendment to the United States Constitution unambiguously mandates that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury…nor be deprived of life, liberty or property, without due process of law… The 6th Amendment to the United States Constitution unambiguously grants the right to trial by jury.  It states "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  The 6th Amendment also quite clearly grants the accused the right to be informed of the nature and cause of the accusation

"Terry Young was deprived of these and the other basic rights as detailed in his Petition for Writ of Certiorari[1] because District Judge Lindberg, 7th Circuit Judges Rovner, Bauer and Wood, D, and now unidentified Supreme Court Justices feel that it is right, and just, and lawful to  incarcerate Terry for life on the basis of a *post hoc virtual indictment* which supplied the elements missing from the actual indictment issued

---

[1] Young does not waive these arguments. They are not asserted herein simply because of Supreme Court Rule 44's limitation of subject matter and space. Young would merely commend them to the reconsideration of the Justices, believing that each has sufficient merit therefor. They are that (1) the 7th Circuit used "harmless error analysis" to supply essential elements missing from the indictment and jury verdict in violation of his 5th and 6th Amendment rights to trial by indictment and jury, constituting structural, nay cataclysmic error; (2) "blue penciling" mandatory application of the  Federal Sentencing Guidelines and applying it to Young to abrogate the guideline maximums applicable him based on the actual jury verdict violated the *ex post facto* prohibition of the Constitution; (3)  the sentence imposed, including supervised release exceeded guidelines mandatory as to him because his crimes ante-dated *Booker*; (4) constitutionally and statutorily Young committed no federal crimes; (5) biased judges decided Young's cases; (6) forfeiture was a nullity; and (7) the 7th Circuit requires Supreme Court supervision.

8

by the grand jury (albeit an invalid 'special' grand jury) and a *post hoc virtual verdict* which supplied the missing elements necessary to increase his sentence from the maximum that the Federal Sentencing Guidelines mandated of 51 months to life. All of these Judges and Justices are satisfied to do so by *ex post facto* application of *Booker* to Young, thereby substituting "advisory" for "mandatory" as the proper role for the Federal Sentencing Guidelines and thereby eliminating the 51 month limit of his sentence and imposing life.

"As Justice Souter has observed in his *Rita* dissent, there were two paths to take if the Federal Sentencing Guidelines "were to survive."

> One was already in place in courts with the foresight to apply *Apprendi* to the Guidelines: require any additional facts necessary for a possible high subrange sentence to be charged and submitted to the jury. True, the Government would have to think ahead (and could not charge relevant facts that emerged unexpectedly at trial). But the mandatory character of the Guidelines would be preserved, the goal of consistency would continue to be served, and the practical value of the jury right would not face erosion.

"That road is paved with 5th and 6th Amendment Guarantees and the mandated uniform sentencing Congress had legislated, trafficked frequently if not well. That was the road not

taken!  The second route, the one taken, turns out to be going somewhere, whether labyrinth or catapult, or nowhere, nobody knows for sure, but, apparently circling back to old *McMillan*,[2] according to Justice Souter:

> ... the now-discretionary Guidelines ...*Booker* remedy would...return to the old sentencing regime and...produce the apparent disuniformity that convinced Congress to adopt Guidelines sentencing in the first place. But if sentencing judges...treated the Guidelines result as persuasive or presumptively appropriate, the *Booker* remedy would in practical terms preserve the very feature of the Guidelines that threatened to trivialize the jury right...undermining *Apprendi* itself, and this is what has happened [with *Rita*]... The upshot is that [*Rita*] moves the threat to the practical value of the Sixth Amendment jury right closer to what it was when this Court flagged it in *Jones*, and it seems fair to ask just what has been accomplished in real terms by all the judicial labor imposed by *Apprendi* and its associated cases.

"Justice Souter espouses a third route for pulling the courts out of the current morass:

> At this point, only Congress can make good on both its enacted policy of mandatory Guidelines sentencing and the guarantee of a robust right of jury trial.

---

[2] Justice Alito has observed: "Every Court of Appeals to address the issue has held that a district court sentencing post-*Booker* may rely on facts found by the judge by a preponderance of the evidence," citing a case from every Circuit [see footnote 4 to his dissent in *Cunningham v. California*, 127 S.Ct. 856 (1/22/07)

10

"However, that perception of judicial helplessness is more self-imposed than real. For there is a another way out which the Supreme Court is capable of effecting [see Young's Petition for Writ of Certiorari, pp. 9-10], by placing sentencing in its constitutional province, the jury.[3]

"While the Supreme Court takes fewer cases each year, the federal government intrudes exponentially beyond the bounds of the Constitution to create ever more need for these protections which, ultimately, only the Supreme Court can provide within the Constitutional framework. Most of the traffic from the 5th and 6th Amendment and other constitutional and statutory abuses in sentencing that come before the courts could be eliminated by sentencing based solely on the facts determined by the jury; all of it if sentencing were done by the jury as in capital cases. This case would be the ideal vehicle for so doing because all the necessary issues have been preserved throughout.

"However desirable one or the other of these approaches might be in solving the sentencing conundrums that have been created as runoff from *Jones* through *Rita*, neither is necessary to give Young his due. Young's salvation may be confined to

---

[3] Justice Alito's reliance on the Punishment of Crimes Act of April 30, 1790 [footnote 1 to his dissent in *Cunningham v. California*, 127 S.Ct. 856 (1/22/07), for support that judges determined sentences when the 6th Amendment was adopted instead of juries seems unjustified, given that he merely cites maximums for offenses without reference to their imposer and that at common law the punishment for felonies was death so that the jury determined the sentence merely by finding the accused guilty. Remnant of this survives in capital cases where the jury decides whether to impose the death penalty.

mandatory application of the sentencing guidelines as mandated by the *ex post* facto prohibition which does not permit a change of law to increase the punishment for a crime committed before the chance. *Booker* was such a change, as it has been interpreted to permit the judge to do what was permitted to do under *McMillan*, what he was prohibited from doing from *Jones* to *Booker*.

"Young's prosecutor was on the old *McMillan* way when he indicted Young, when he took Young to trial, when he took Young to sentencing. But *Jones* signaled a different direction. The prosecutor was caught in the switch because the indictment contained no drug quantity and no money laundering elements, and, in consequence, the jury verdict did not contain them either. This was not the prosecutor's fault because that was the old *McMillan* way. The prosecutor had planned to present them to Judge Lindberg as "sentencing factors" as permitted under *McMillan*, but in the switch signaled by *Jones* and the change of direction caused by *Apprendi* and *Blakely*, he could no longer use them to enhance Young's sentence above the guideline maximum (with grouping 51 months) supported solely by the jury verdict that said nothing about "sentencing factors" because the indictment had said nothing about them.

"For a time, call it Young's time, sentences would be confined to the paltry maximums that indictments and jury

verdicts bare of "sentencing factors" would permit.  Prosecutors would soon remedy this by packing indictments with "sentencing factors," which would then result in jury verdicts packed with "sentencing factors."  The system could then return to the horrendous sentences of old, provided, of course, that juries, grand and petit, went along and would not nullify the scheme. Who knows what juries will do when the burdens of imposing horrendous sentences are placed on them directly?  History gives some clues.  Enter *Booker* in the knick of time to save the day.  If the guidelines were advisory, the judges could go about as they had before, never mind the logical non-sequitur. The maximums would revert to the statutory maximums and any jury verdict of guilty would again support whatever sentencing decision the judge chose.  *Rita* would follow to hold that as long as the sentence was within the advisory guidelines it would be presumed reasonable and would withstand attack.  That would put the system back in the hands of the judges and keep the jury out of bounds, confined to full sway solely in the two places the federal government does not care about: deciding between life and death in capital cases and assessing damages in civil cases.

"During Young's time, however, that is from *Jones* to *Booker*, the right embodied in Article I, § 9, the *ex post facto* prohibition, of the Constitution mandates the mandates of the

Federal Sentencing Guidelines. Since Young's indictment and Young's jury verdict did not include drug quantity and money laundering elements, his sentence must be confined to the Federal Sentencing Guideline maximum of 51 months as mandated by Congress in those guidelines. [See Young's Petition for Writ of Certiorari, pp. 9-14.]

"CONCLUSION

Rita has highlighted a standard of reasonableness which the 7th Circuit could not have applied to the district court's sentencing decisions because the reasons therefor that Rita commands were not provided. Instead, the inferior courts provided the elements necessary for the sentence that was imposed on Young by *judicial fiat* based on the jiggery-pockery of a posited *virtual indictment* and a posited *virtual jury verdict* that existed only in their minds. Such a basis for sentencing Young to life in prison is beyond structural error. It requires that his proper sentence of 51 months be confirmed and that he be released from prison forthwith. Being forced to trial upon a constitutionally defective indictment, being sentenced to life in prison on the basis a *post-hoc virtual indictment* and a *post-hoc virtual jury verdict* concocted by the courts must be structural error. It cannot be excused on the basis of "harmless error analysis." Such nonsense has already been dismissed in *U. S. v. Gonzalez-Lopez*, 126 S.Ct. 2557 (2006)

where violation of the 6th Amendment rendered trial fundamentally unfair and unreliable. This case should not be governed by *Washington v. Recuenco*, 548 US     (2006) because of the difference in the quality and quantity of facts not presented to the jury for decision, simple and encompassing in the case of a "deadly weapon," no doubt described and presented to the jury, and complex and difficult of ascertainment of type, quality, quantity, source in the case of drugs and laundry. Also, *Recuenco*'s pedigree is *Neder v. U.S.*, 527 US 1 (1999), a ridiculous case when decided, which should not have survived *Apprendi*. Nevertheless, like *Recuenco*, "materiality" as defined in federal criminal practice is so much simpler since it encompasses everything, as Justice Stevens observed in dissent, even the false praise of a banker's bow tie.

"If the Supreme Court "has repeatedly held that, under the 6th Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence," as Justice Ginsburg accurately stated for the Court in *Cunningham v. California*, 127 S.Ct. 856 (2007), how can the obvious, egregious 5th and 6[th] and *ex post facto* violations in this case not deserve the attention and remedy by this Court?"

WHEREFORE, PETITIONER AGAIN PRAYS THAT HIS HABEAS CORPUS PETITION BE GRANTED.

Respectfully Submitted,

By: *Terry Young*
Terry Young, Pro Se
USP Terre Haute
P.O. Box 33
Terre Haute, IN 47808

CERTIFICATE OF SERVICE

I hereby certify that I caused this reply to be served on John F. Podliska at his office at 219 S. Dearborn Street, Chicago, Illinois, on 9/8/08.

By: *Terry Young*
Terry Young, Pro Se
USP Terre Haute
P.O. Box 33
Terre Haute, IN 47808